[Crim. No. 2957.   First Dist., Div. One.   Apr. 23, 1954.]

THE PEOPLE, Respondent, v. ROBERT GEBRON, Appellant.

Leo A. Sullivan for Appellant.

Edmund G. Brown, Attorney General, David K. Lener, Deputy Attorney General, J. F. Coakley, District Attorney, and Thomas J. Buckley, Deputy District Attorney, for Respondent.

WOOD (Fred B.), J.—The defendant has appealed from the judgment rendered against him upon conviction of three violations of section 11500 of the Health and Safety Code; one for furnishing marijuana and two for selling marijuana. He has also appealed from an order denying his motion for new trial.  The trial was before the court without a jury.

Defendant claims (1) the evidence is insufficient to support the judgment and (2) the trial court erroneously shifted the burden of proof to the defendant.

■ (1) *The evidence amply supports the judgment.* It consists chiefly of the testimony of the police officer, Douglas Hall, who as an undercover agent contacted defendant and made the purchases. Defendant took the witness stand, admitted that Hall contacted him on some of the occasions narrated by Hall but denied furnishing or selling or having possession of any marijuana.

As defendant's counsel aptly remarked upon motion for new trial, ''the case turns upon whether or not the Defendant is to be believed or whether or not the arresting officer is to be believed.'' That was an issue of fact for determination of the trier of the facts. In the absence of anything inherently improbable in the testimony of Hall, a reviewing court must accept that determination. Defendant points to no such improbability in Hall's testimony, and we have found none.

Defendant says the plaintiff called no corroborating witness even though some eyewitnesses were known to Hall. This is not the type of case in which the law requires corroboration. Some of those witnesses were known to defendant and were friends of his, yet he did not call them to corroborate his testimony.

Defendant directs attention to the fact that Hall was serving a probationary period as a new appointee to the city police force and therefore had a motive to prosecute and procure convictions to demonstrate to his superiors his ability and efficiency. We cannot indulge in any such speculation. His ambition, if he was ambitious, could as well stimulate him to do an honest job as undercover agent.

In the course of his undercover work, Hall was furnished cash by the head of the morals squad for use in making purchases. Defendant says, in effect, that Hall was not businesslike in accounting for those moneys and did not recall how much marijuana he purchased during a particular 24-hour period. That is not a compelling reason for disbelief of the officer's testimony. Moreover the record does not bear out the contention. It was really but a matter of an indistinct recollection of the details of transactions which occurred some eight months before the date of the trial. Concerning marijuana purchases, Hall said he would have to consult his notes at home before he could speak with accuracy as to those details. That was quite natural and does not suggest prevarication or a motive to prevaricate.

It appeared, also, that Hall's service with the police department ended April 10, 1953, some seven months after

purchasing the marijuana from the defendant. He had, in the interim, failed in some phase of a qualifying civil service examination given by Dr. Douglas M. Kelley of the faculty of the University of California. Defendant's counsel in argument ascribed that fact as a reason for discounting Hall's testimony and said he would be willing to stake the outcome of the case on Dr. Kelley's findings on Hall. After some discussion concerning the availability of Kelley as a witness, defendant's counsel said he would just as soon have the doctor's written report as his testimony, if that were agreeable to the other side and the court. It was so stipulated. Dr. Kelley made and signed a written report which was introduced in evidence. In that report the doctor said, concerning Hall's veracity, there was in his opinion "nothing in the examination to indicate any lack of veracity, and insofar as I could determine, his statements during the examination were all truthful." He added that none of the characteristics which persuaded him that Hall was not adequately equipped to undertake law enforcement work, indicated that Hall "was a pathological liar, and none of these characteristics would tend to invalidate statements made by him from a point of view of their veracity. My feeling is that any testimony he might give as to matters of fact could be weighed equally with that of other witnesses." The doctor's report tended to dispel the inference concerning Hall's veracity which defendant sought to draw from his failure to pass a portion of the civil service qualifying examination.

We need not draw this discussion out any further. Enough has been given to show the nature of defendant's challenge of the sufficiency of the evidence, a type of challenge quite proper for consideration by the trier of the facts, whether prior to conviction or upon motion for new trial, but not appropriate for consideration by a reviewing court.

■ (2) *The record does not support the contention that the trial judge shifted the burden of proof from the State to the defendant.*

At the close of the trial, during oral argument, defendant's counsel, contending that Hall's testimony was not worthy of belief, urged that Dr. Kelley be brought in as a witness. The court said: "Let me think that over. I will be very frank about the situation. It is hard for me to conceive that an officer will say 'I gave the man $18; he gave me a tin of marijuana. On the second occasion I gave the man $18.'— he said $20 but he got $2 change back—'and he gave me a

tin of marijuana.' It is hard for me to conceive of why that officer would deliberately frame a man and that is just what you are down to. Now if there is some light to be thrown on the officer that would help me in determining whether I should or should not believe the officer, I can see no harm in it,'' and ''I want to think about it. It is a novel point; I haven't had it come up yet. I have had Hall before me; he testified at length. I had a chance to observe him and see him. I will be very frank about it; as far as I could see from my observation of him, he was a truthful witness. Now I had no reason in my own mind from my observation of him, from hearing what he had to say, having heard everybody that has testified here—I had no reason at the end of this case, from my own thinking, to doubt Hall. But I do want to think about this one thing. Let's put it over until Tuesday at 9:15, and I am going to think about this particular phase of it.''

We find in that statement no basis for an inference that the trial judge, in deciding the facts, put the burden of proof upon the defendant. This was a court case, not a jury case. The judge, as trier of the facts, was in all fairness indicating to counsel his tentative appraisal of Hall's testimony.

Later, at the request of defendant's counsel, Dr. Kelley's report concerning Hall was obtained and stipulated into evidence. Upon motion for new trial, defendant's counsel said, ''Now Your Honor's position is as you stated it, that why would the officer make the arrest unless it were true? That would be a complete reversal of our entire theory of law. It would place upon the defendant——'' The court interrupted saying: ''That is not a fair statement at all. I said in weighing the testimony of the Defendant Gebron against the testimony of the witness Hall, one of the things that was in my mind was: What motive would Hall have in framing this Defendant? Now you argued before and you brought out on cross examination that he had money to spend on narcotics; he wasn't held to strict account for it; he was ambitious to get a permanent assignment to the Oakland Police Department; that those were motives that he might have had in framing the Defendant. I considered those along with other elements of the case.''

The mere reading of these remarks of the trial judge demonstrates the unsoundness of defendant's contention.

The judgment and the order appealed from are affirmed.

Peters, P. J., and Bray, J., concurred.