[Crim. No. 6908. In Bank. Nov. 16, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. FREDDIE
REGALDO TORRES, Defendant and Appellant.

Russell E. Parsons for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

GIBSON, C. J.—The court, sitting without a jury, found defendant guilty of possessing narcotics in violation of section 11500 of the Health and Safety Code, and he appeals, contending that illegally obtained evidence was used against him.

Officer Walsh, a member of the narcotics division of the Los Angeles Police Department, testified that he observed defendant in the vicinity of 3rd and Hill Streets in Los Angeles, an area "having some frequency of narcotic activity," and "a known hangout for narcotic users and pushers." He also saw defendant drive an automobile to 6th and Alvarado Streets accompanied by two persons who got out of the car, entered a drugstore located there, and purchased some milk sugar and gelatin capsules. Six days later, Walsh and four other officers saw a known user of narcotics leave defendant's apartment, the location of which they had previously ascertained. They immediately went into the apartment building and stood outside defendant's door for 15 or 20 minutes without knocking or attempting to enter. While they were stand-

ing there, the door was opened by defendant's wife, and the officers, seeing defendant in the room a few feet from her, identified themselves as policemen and stepped into the apartment. A woman ran in the direction of the bathroom and Walsh, who followed her there, discovered several capsules in the toilet with white powder in them, later identified as heroin, and some cups on the edge of the bathtub which also contained heroin. Walsh then arrested defendant, who stated that he had acquired the narcotics that afternoon. At the trial the narcotics were admitted into evidence over defendant's objection. The officers did not have a search warrant or a warrant of arrest.

 A search without a warrant is proper where it is incident to a lawful arrest based on reasonable cause to believe that the accused has committed a felony. Such a search is not rendered unlawful merely because it precedes rather than follows the arrest. (*People* v. *Hammond,* 54 Cal.2d 846, 853 [9 Cal.Rptr. 233, 357 P.2d 289]; *People* v. *Ingle,* 53 Cal.2d 407, 413 [348 P.2d 577].) Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty. The test is not whether the facts on which the officer relies are sufficient to convict, but only whether the person should stand trial. (*People* v. *Ingle,* 53 Cal.2d 407, 412-413 [348 P.2d 577]; *People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967].)

As we have seen, before the officers entered defendant's apartment they knew that he had been in an area which was a "hangout" for users and sellers of narcotics, that he drove two men to a drugstore who purchased milk sugar and gelatin capsules, and that a known addict had visited his apartment. While the only evidence connecting the substances purchased at the drugstore with the preparation of narcotics is that the capsules in the present case had heroin in them, many cases indicate that capsules are used as containers for heroin (see e.g., *People* v. *Salcido,* 154 Cal.App.2d 520, 521 [316 P.2d 639]; *People* v. *Ruiz,* 146 Cal.App.2d 630, 632 [304 P.2d 175]; *People* v. *Bigelow,* 104 Cal.App.2d 380, 384 [231 P.2d 881]; *People* v. *Shafer,* 101 Cal.App.2d 54, 56-57 [224 P.2d 778]), and others state that milk sugar is employed to cut heroin (*People* v. *Dixon,* 46 Cal.2d 456, 457 [296 P.2d 557]; *People* v. *Garcia,* 187 Cal.App.2d 93, 99 [9 Cal.Rptr. 493]). A court may take judicial notice of a fact which is of common knowledge and is certain and indisputable (*Com-*

*munist Party* v. *Peek,* 20 Cal.2d 536, 546 [127 P.2d 889] ; *Varcoe* v. *Lee,* 180 Cal. 338, 342 et seq. [81 P. 223]), and under this rule we may take judicial notice that capsules and milk sugar are used in the processing of narcotics.

 It has been said that the circumstances that several addicts leave a residence warrants the inference that there is a supply of narcotics there (see *People* v. *Williams,* 175 Cal. App.2d 774, 775-776 [1 Cal.Rptr. 44]), and, although in the present case only one addict was seen leaving defendant's apartment, there was other evidence indicating defendant's guilt. The fact that milk sugar and gelatin capsules were purchased in combination was strongly indicative that they were to be used in connection with narcotics, and in view of the officers' previous knowledge regarding defendant, it was not unreasonable for them to believe that the purchase was made for defendant's use and that the purpose of the addict's visit related to narcotics in defendant's possession.

The police did not seek to enter the apartment as soon as the addict left but waited outside, apparently hoping to learn other details of defendant's activities. As the door was opened, they could see defendant in the room a few feet away, and it is, of course, proper for officers to seek interviews with suspects or to call upon them at their homes for that purpose. (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852].) The officers identified themselves, and no objection was made to their entry. When they saw the woman running toward the bathroom, they were justified in concluding that she was attempting to dispose of narcotics.

Under the circumstances we conclude that the officers acted reasonably and that the evidence was properly admitted.

The judgment and the order denying a new trial are affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.