[Crim. No. 8641.   Second Dist., Div. Three.   Dec. 3, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. TRAVIS JEROME EDMUNDSON et al., Defendants and Appellants.

Apple & Cohen and Theodore A. Cohen for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Rose-Marie Gruenwald, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—The contention raised by the defendants on this appeal from the judgments of conviction of the crime of possession of marijuana (Health & Saf. Code, § 11530) is that the evidence was obtained as the result of an illegal search and seizure.

Each defendant waived a trial by jury. Joe Lesnick, a deputy sheriff of the County of Los Angeles assigned to the narcotic detail, testified that on January 24, 1962, he went to an apartment building in West Hollywood at approximately 11 p.m. Three other deputies were with him. Part of his testimony was as follows: "I went to the door of apartment 1, knocked on the door. A female voice stated, 'Who is it?' I stated, 'It's Joe.' She stated, 'Joe who?' I stated, 'Joe Lesnick.' A couple of seconds later the front door was opened by defendant Paz. I displayed my badge and identification, advised her that I was a sheriff's narcotics officer. At this time she—defendant Paz screamed, turned around and ran to the east through the combination living room-bedroom, stopped at a door leading into the kitchen. I followed her to this door where she stopped and had a conversation with her. . . . He [defendant Edmundson] was sitting up in the bed which was directly next to this doorway, located against the east wall . . . I asked her [defendant Paz] why she ran, [and] she said she was scared. I said, 'We are police officers, why are you scared?' She said, 'There is some marijuana around the corner on the kitchen table.' " Officer Lesnick stepped into the kitchen and in a candy box and in a bouillon-cube container he found part of the marijuana which was received in evidence at the trial. A general search of the premises ensued and more marijuana was found, part of it being recovered from the bedspread on the bed in which the defendant Edmundson was reclining.

About one month prior to the date of the entry into the apartment, an informant had given Officer Lesnick "information as to a past residence of these two defendants, and that they both used marijuana." About an hour and a half before the entry, the officers had talked to the manager of a "coffee house" and had been given the defendants' address. The manager said that Edmundson was not at work that evening but was ill at home.

The officers had no search warrant. They were not in uniform and were dressed in an informal fashion. At the time Officer Lesnick knocked on the door of the apartment, two of the other officers ''were down on the ground in front of the apartment'' and one ''was on the stairway leading up to the second floor.'' When Officer Lesnick told the defendant Paz that he was an officer, he had his badge and identification card ''directly in front of her face.'' She had opened the door about ''18 inches to two feet.'' When she screamed and ran, Officer Lesnick ''just walked through the door and walked over to her.'' The defendants were placed under arrest after Officer Lesnick ''recovered the candy box and the bouillon cube container.''

On redirect examination, Officer Lesnick was asked if at any time the defendant Paz told him why she screamed and ran from the door. His answer was: ''She told me she had—when she realized I was a narcotics officer she panicked remembering that she had some marijuana in on the kitchen table and before she could think she screamed and turned around and ran toward the marijuana, and then she stopped in the doorway. She also said that her actions were somewhat caused by the fact that she was under the influence of marijuana.'' That conversation took place at the sheriff's station in West Hollywood about an hour and 15 minutes after the arrest.

Officer Phillips gave testimony relating to the entry and search of the apartment and as to statements made by the defendants at the sheriff's station. He also testified that the officers had no warrant for the arrest of either defendant. He expressed the opinion that the defendant Paz was under the influence of marijuana.

The defendant Paz testified on her own behalf. As to the entry of her apartment, she testified in part as follows: ''About 11:00 o'clock there was a knock on the door and I said, 'Who is it?' and the other person said, 'Joe.' So, I looked at Trav and I said, 'Joe,' and I said, 'who?' And he said, 'Joe,' and so I put on a blouse. I was wearing a negligee and I threw on a little cotton blouse over it and I went and I opened the door and I got it half-way opened and I saw that there were four men standing there and I couldn't see them real well, but, you know, there were four men there, so I started to shut the door and the one that was closest to the door, almost standing in front of it, put his foot in and

so I started to shove the door and I said, 'Oh, no,' you know, because I didn't know who they were and he said, 'Oh, yes,' and I thought, well, there is no point in blocking the door. I was weighing about 98 pounds then, so I moved away from the door and the door came wide open and all four of them came piling in.'' The light outside the apartment door was off. She did not know the men were law enforcement officers prior to their entry and they did not indicate that they were. She tried to slam the door on Officer Lesnick's foot. After they entered the room they did not reveal their identity. When they told her they were going to book her, she became aware that they were officers. She never saw a badge or identification card in Officer Lesnick's hand or in the hand of Officer Phillips. The defendant Paz further testified that for several years her life had been threatened. When she went to the door, she thought there was just one person at the door and that ''Joe'' was someone from a recording company with which she did business. On cross-examination, the defendant Paz said that there was marijuana in the candy box which was on the kitchen table and that it belonged to her.

The defendant Edmundson did not testify.

The objection of the defendants to the admission in evidence of the marijuana found in the apartment was overruled.[1]

■ Upon this appeal the evidence and the inferences to be reasonably deduced therefrom must be viewed in the light most favorable to the People. ■ The weight to be given to the evidence was a matter exclusively within the domain of the trial court. (*People* v. *Lollis,* 177 Cal.App.2d 665, 670 [2 Cal.Rptr. 420].)

■ It is not unreasonable for law enforcement officers to seek interviews with persons suspected of criminal activity and, for that purpose, to call upon them at their places of residence. (*People* v. *Torres,* 56 Cal.2d 864, 867 [17 Cal.Rptr. 495, 366 P.2d 823] ; *People* v. *Baca,* 198 Cal.App.2d 391, 395 [17 Cal.Rptr. 779].) ■ The information possessed by the officers at the time they came to the door of the defendants'

---

[1]In the superior court the defendants made a motion under section 995 of the Penal Code to set aside the information upon the ground that the defendants had been committed without reasonable or probable cause. That motion was denied. At the preliminary hearing the testimony of Officer Lesnick as to the entry and arrest was in substance the same as that given by him at the trial.

apartment was not sufficient, in and of itself, to justify an arrest of the defendants. (See *People* v. *Ruiz*, 196 Cal.App.2d 695, 699 [16 Cal.Rptr. 855].) But the conduct which then occurred on the part of the defendant Paz[2] was such as to arouse in the mind of Officer Lesnick a suspicion founded on circumstances sufficiently strong to warrant a reasonable man in the belief that she was then in possession of narcotics. The belief engendered by the conduct of defendant Paz was confirmed when, immediately after she ran from the door, she disclosed to the officers the presence of marijuana in the kitchen. Consequently, under the circumstances the entry of the apartment was justified and there was probable cause for the arrest of the defendants. (See *People* v. *Torres, supra,* 56 Cal.2d 864, 867; *People* v. *Lawton,* 186 Cal.App.2d 834, 836 [9 Cal.Rptr. 122].) ▆▆ The search of the apartment thereafter conducted was warranted since it was incident to a lawful arrest. (See *People* v. *Lawton, supra,* 186 Cal.App.2d 834, 836.)

The judgment of conviction with respect to each defendant is affirmed.

Shinn, P. J., and Files, J., concurred.

---

[2]Unlike the factual situation in *Wong Sun* v. *United States,* 371 U.S. 471 [83 S.Ct. 407, 9 L.Ed.2d 441], the evidence in the present case supported a determination on the part of the trial judge that Officer Lesnick clearly identified himself as a law enforcement officer before the defendant Paz ran away from the doorway.